Upon review of the competent evidence of record with respect to the errors assigned, and finding no good grounds to receive further evidence or rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, affirms the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between plaintiff and defendant-employer on the relevant dates.
3. Defendant-employer was self-insured on 24 March 1994.
4. Plaintiff's average weekly wage will be determined by and Industrial Commission Form 22.
5. The parties entered into a Form 21 Agreement with respect to Industrial Commission File Number 506658 on 2 February 1995, approved by the Commission on 7 March 1995.
6. An Industrial Commission Form 22, dated 19 June 1997, is admitted into evidence as Stipulated Exhibit #2.
7. The plaintiff's medical records are admitted into evidence as Stipulated Exhibit #3. This exhibit, received at the Commission 17 February 1998, includes:
1) Records from Dr. Simpson;
2) Records from Randolph Hospital;
3) Records from Dr. Rick Blase;
4) Records from Wesley Long Community Hospital
5) Records from Dr. Randy Kritzer;
6) Records from Bray-Maness Physical Therapy;
7) Records from Dr. Mark Yates;
8) Records from Dr. Gregory Mieden; and
9) Records from Dr. Mark Roy.
8. The undersigned takes Judicial Notice of the Industrial Commission forms and form agreements of File Numbers 506658 and 432839.
 *********** RULINGS ON EVIDENTIARY MATTERS
The objections contained within the depositions of Dr. John Simpson and Dr. Richard Blase are ruled upon in accordance with the applicable rules of evidence and the Opinion and Award in this case.
 ***********
The Full Commission affirms the findings of fact found by the Deputy Commissioner as follows:
 FINDINGS OF FACT
1. At the time of hearing, plaintiff was a 40-year old male who had been employed by defendant-employer on 24 March 1994 as a band saw operator. Defendant is engaged in the fabrication of pillows and cushions to use in furniture.
2. On 24 March 194, plaintiff sustained a compensable injury by accident arising out of and in the course of his employment with defendant when a bun fell off the bun board and hit plaintiff between the back of his head and right shoulder.
3. Although plaintiff did not lose any time from work as a result of his 24 March, 1994 compensable injury, he did continue seeing Dr. Simpson, the company doctor, for treatment. Dr. Simpson referred plaintiff to Dr. Kritzer, a neurosurgeon, after plaintiff's continued complaints of severe left shoulder and arm pain, and decreased range of motion. The plaintiff also later complained while treating with Dr. Blase, a chiropractor, of some right shoulder and arm pain. Dr. Simpson ordered a MRI Scan in April, 1994, which revealed a moderate size right lateral C5-6 disc herniation causing impingement at the right C6 nerve root. This MRI report was not consistent with plaintiff's primary complaint of severe left shoulder and arm pain.
4. Surgery was not recommended and plaintiff's pain gradually improved with conservative measures until an alleged work-related injury on 27 September 1994 where foam fell and struck plaintiff in the right side of his head.
5. After continued complaints in October, 1994 of left shoulder pain, Dr. Simpson set up an appointment for Dr. Tom Osteen to see plaintiff. Plaintiff refused to see him, so Dr. Simpson set up an appointment with Dr. Harkins, although it is unclear from the record whether plaintiff saw Dr. Harkins.
6. On 15 January 1995, plaintiff sustained a compensable injury by accident arising out of and in the course of his employment with defendant when he slipped and fell on a wet floor in the bathroom. Plaintiff did not sustain a blow to any part of his shoulder or back, but caught his weight on his hand. Diagnosis was muscular strain to left shoulder, neck and upper back pain. Dr. Simpson simply wrote "back" on plaintiff's original excuse from work.
7. The parties entered into a From 21 Agreement with respect to this 15 January 1995 injury. The description of the injuries was simply "back pain."
8. Plaintiff continued to treat with Dr. Simpson. Plaintiff's areas of pain were left shoulder, trapezius and left paracervical pain. Dr. Simpson referred plaintiff to physical therapy, which included cervical traction.
9. As a result of the 15 January 1995 compensable injury, plaintiff was out of work 17 January 1995 through 30 January 1995. Plaintiff returned to work in a light-duty capacity of an inspector.
10. On 6 February 1995, Dr. Simpson allowed plaintiff to return to his regular job, at plaintiff's request, with the restrictions of no overhead lifting and no lifting greater than 40 pounds.
11. In June, 1995, plaintiff returned to Dr. Simpson complaining of left shoulder and left arm pain. Plaintiff denied any additional accident.
12. Dr. Simpson continued to treat the plaintiff for his left shoulder, neck and arm pain. Dr. Simpson referred plaintiff to Dr. Yates, an orthopaedist, for consultation or treatment in August, 1995 and again to Dr. Kritzer on 9 October 1995.
13. Plaintiff's first complaint of low back pain to Dr. Simpson following his 1994 and 1995 compensable injuries was 12 October 1995. Plaintiff complained he had jumped off his couch after getting a spasm in his neck and then felt a catch in his back. Although plaintiff showed up for the visit with a cane and walking stooped over, he did not really use the cane. The pain was just low in the back across the sides with no radicular nature and no palpable muscle spasm. Plaintiff had just been seen by Dr. Simpson and Dr. Kritzer on 9 October 1995 with no complaints of low back pain.
14. In June, 1993, before either of the two compensable injuries at issue, Dr. Simpson had treated plaintiff for low back pain. At that time, plaintiff suffered from a lumbosacral strain. On 25 June 1993, plaintiff's last visit to Dr. Simpson concerning back pain before his compensable injury, plaintiff related that his back was better and he was more active.
15. 12 October 1995 was plaintiff's last visit to Dr. Simpson. At that last visit, the doctor noted plaintiff's symptoms were "getting completely and totally out of control with little in the way of objective clinical findings."
16. Plaintiff continued to work for defendant as a drill press operator, and later in shipping. During May, 1996, plaintiff allegedly had a "loading accident" which he did not report to the defendant as an accident and the defendant found out about it during plaintiff's testimony at the hearing. This supposedly occurred while moving cushions.
17. On 15 May 1996, plaintiff sought treatment from Dr. Blase, the chiropractor, who had treated him in 1994, for low back pain and right leg pain which had gradually onset over the past three weeks. Plaintiff denied it was workers' compensation and indicated a physician had not seen him for this problem. Plaintiff also indicated previous treatment in the past year had been for neck and shoulder pain.
18. Dr. Blase performed therapy on plaintiff and, when this was unsuccessful, completed a disability certificate that plaintiff was totally incapacitated on 5 June 1996 and could return to work on 24 October 1996.
19. In June, 1996, plaintiff applied for and received short-term Disability through a company-funded disability plan, effective from 15 May 1996 for twenty-six (26) weeks, the full amount under the policy. At application, plaintiff denied this lower back disability was work-related.
20. When plaintiff's short-term disability expired plaintiff did not return to work on the advice of his attorney.
21. Dr. Blase ordered a MRI of plaintiff's lumbar spine on 20 June 1996. This revealed degenerative disc disease, some slight discs bulging, but no herniations or nerve root compression. Plaintiff's last treatment with Dr. Blase was 12 September 1996.
22. On 9 July 1996, plaintiff went to Dr. Mieden, a neurologist, for his lower back pain. At that visit, plaintiff related the lower back pain beginning suddenly while lifting cushions at work the end of April, 1996. Dr. Mieden gave him medication and recommended an epidural steroid if the chiropractic treatment with Dr. Blase did not help. Plaintiff only saw Dr. Mieden once.
23. Plaintiff sought treatment from Dr. Mark Roy, a neurosurgeon, in November, 1996, upon referral from his attorney. Plaintiff suffered from a cervical and lumbar spondylosis. Plaintiff's neurological exam was normal. Dr. Roy recommended jobs with no lifting greater than 15 pounds on a repetitive basis, or constant lifting and bending. Dr. Roy was not provided with a complete treatment history of plaintiff, or his prior medical records when he examined him. On the patient intake form, plaintiff alleged lower back problems began after a work injury on 13 May 1996.
24. Plaintiff never returned to work for defendant after his short-term disability expired. At the time of hearing, defendant-employer still has plaintiff on the payroll file as an employee. At the time of hearing, plaintiff had moved to Louisiana to live and had been there approximately two (2) months. Plaintiff's family is from Louisiana.
25. There is insufficient medical evidence from which to determine by its greater weight that plaintiff's time out from work May, 1996 and continuing, is causally related to plaintiff's compensable injuries of 24 March 1994 and 16 January 1995.
26. Plaintiff has argued the Form 21 Presumption applies, however, the greater weight of the medical evidence points to an alleged injury in late April or May, 1996 as the cause of plaintiff's inability to work. There has been no acceptance of compensability of such an incident.
27. Additionally, the undersigned is unable to accept as credible plaintiff's allegations that any current disability is the natural and direct result of his compensable injury based on his demeanor, his medical records and other credible evidence of record. In October, 1995, plaintiff originally maintained lower back pain was not work-related. He maintained this again when he sought treatment in May, 1996. Later he changed and told physicians, as well as testified, of another work-related incident in May, 1996. If the lower back pain was related to either compensable injury, it would have manifest prior to October, 1995.
28. Plaintiff was not justified in failing to return to work after the expiration of his short-term disability. The Deputy Commissioner did not accept plaintiff's explanations as to why he did not return as credible based on his demeanor and testimony at the hearing, as well as the complete medical record. As the Deputy Commissioner was in a better position than the undersigned to view the witnesses and judge their credibility, the undersigned adopt the determination of the Deputy Commissioner.
29. It was reasonable to conduct a hearing in this matter.
 ***********
Based on the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. In October, 1995 and May, 1996 and continuing, plaintiff's complaints of lower back pain did not result from plaintiff's compensable back injury by accident on 24 March 1994 and 16 January 1995 to his shoulder, neck and upper back. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff is not entitled to temporary total disability from May, 1996 and continuing since plaintiff's disability was not caused by plaintiff's compensable injuries. N.C. Gen. Stat. § 97-29.
3. Plaintiff is not entitled to have defendants provide all medical treatment arising from plaintiff's lower back with respect to Industrial Commission File Numbers 506658 and 432839. N.C. Gen. Stat. § 97-2(6); N.C. Gen. Stat. § 97-25.
4. Plaintiff is not entitled to attorney fees. N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
 ORDER
1. Plaintiff's claim for compensation and medical treatment for his lower back is and under the law must be DENIED.
2. Each side shall bear its own costs.
 *********** S/ _______________________ RENÉE C. RIGGSBEE COMMISSIONER
CONCURRING:
S/ _____________________ DIANNE C. SELLERS COMMISSIONER
S/ _____________________ THOMAS J. BOLCH COMMISSIONER